IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LUKE A. WEILAND, and
J.D.W., a minor, and
N.J.W., a minor,
by their mother and next friend, ANDREA WEILAND,

                Plaintiffs,                OPINION AND ORDER

    v.
                                                  24-cv-77-wmc

THE CITY OF WISCONSIN RAPIDS, WISCONSIN,
and in their individual capacities,
RODNEY KRAKOW, and
DEAN FLEISNER,

                Defendants.

---

Plaintiffs Luke Weiland and his minor children have filed a complaint alleging Fourth Amendment claims of excessive force and unreasonable detention during a traffic stop by Wisconsin Rapids Police Officers Rodney Krakow and Dean Fleisner. (Dkt. #1.) In addition to suing the two officers individually, plaintiffs are also suing the City of Wisconsin Rapids itself solely for purposes of indemnifying the individual defendants under Wis. Stat. § 895.46. (*Id*.) The City has moved to dismiss this indemnification claim under Federal Rule of Civil Procedure 12(b)(6), or alternatively, for an order "expressly providing that (i) it is not obligated to participate in the litigation until such time as a judgment has been entered" against the police officer defendants; and (ii) "that it be removed from the caption in the matter, not listed as a party in any pleadings or other documents in this matter, nor mentioned or referenced as a potential indemnitor." (Dkt. #5, at 2.) For reasons explained below, the court will deny both motions.

ALLEGATIONS OF FACT[1]

On the morning of January 29, 2023, plaintiff Luke Weiland was taking his two minor children ("J.D.W." (14) and "N.J.W." (12)) and one of their friends, another minor ("R.B." (12)), to a youth baseball practice in Mosinee, Wisconsin, when he noticed a Wisconsin Rapids police car in his rear-view mirror with its emergency lights activated. Weiland, who was traveling on Highway 34, did not initially think that the police officer was trying to pull him over. As Weiland pulled onto the shoulder to give the officer a safe pass, he realized that the officer was making a traffic stop on him. Weiland then pulled onto a side road to avoid stopping on the highway.

The officer who made the traffic stop, later identified as defendant Krakow, stepped out of the squad car and began screaming at Weiland, ordering him to turn the vehicle off and put the keys on the roof. After Weiland complied, Krakow then instructed Weiland and all passengers to keep their hands on the ceiling of the truck. Although Weiland and the children complied to the best of their ability, Krakow drew his gun, crouched behind his squad door, and pointed the weapon at Weiland's vehicle.

Other officers arrived, including defendant Fleisner, and also drew their weapons. Krakow instructed Weiland to step out of the vehicle and drop to his knees with his back to the officers. After Weiland complied, Officer Krakow placed him in handcuffs. At this point, a dispatcher for Wood County telephoned Weiland's wife, Andrea Weiland, who was the registered owner of the pick-up truck that Weiland had been driving. Andrea told the dispatcher that her husband was driving three children to Mosinee for baseball practice, and

---

[1] The allegations of fact, which are taken as true for purposes of ruling on the motion to dismiss, are from the plaintiff's complaint. (Dkt. #1.)

she could think of no reason that he would have filed to pull over. Andrea also advised the dispatcher that she worked with the K9 unit, and that her husband was an attorney in Wisconsin Rapids, who was personal friends with the county sheriff. The dispatcher relayed this information to the officers on scene.

Officer Krakow also asked Weiland who his passengers were, and Weiland explained that they were his two sons and their friend on their way to baseball practice. Krakow then placed Weiland in the back of his squad car. Defendant Fleisner and another officer then approached the pick-up truck with guns drawn with Krakow following closely behind. The officers surrounded the vehicle and ordered the children, who still had their hands raised, to step outside. N.J.W. was brought to Fleisner's squad car, which contained a police dog. When attempting to place N.J.W. in the car, the dog came out "aggressively." Shaken by the dog's actions, N.J.W. was then apparently placed in the front passenger seat of the squad car alone, as the dog continued to bark and scratch at the backseat divider. J.D.W. and the remaining child (R.B.) were placed in another officer's car.

When Weiland demanded to know what was going on, Krakow told him that the situation was being treated as a "high risk vehicle stop" because Weiland had driven a long way before pulling over. Eventually, the three children were allowed to return to the truck and Weiland was uncuffed. Weiland was allowed to go to the truck to calm the children, but he was not allowed to get inside the truck. The temperature that day was five degrees Fahrenheit, with a wind-chill at or below zero. Although all the officers returned to their vehicles, Weiland was made to stand outside for approximately 10 to 15 minutes until Krakow emerged to hand him two citations, one for speeding and the other for resisting or fleeing the scene. Weiland and the children, who were detained from 9:22 a.m. to 9:46 a.m., elected to return home

instead of going to baseball practice because they were too shaken up by the traffic stop. Shortly thereafter, another officer went to Weiland's home and issued another citation for failing to yield to an emergency vehicle, explaining that this citation would replace the one for resisting or fleeing the scene. All of these citations were later dismissed.

OPINION

Plaintiffs claim that the individual police officer defendants had used excessive force by pointing weapons at them and unreasonably detained them during this traffic stop in violation of the Fourth Amendment. (Dkt. #1, at 14-15 ¶¶ 501-502.) Plaintiffs do not claim any wrongdoing by Wisconsin Rapids, nor that the officers' actions were carried out pursuant to a municipal custom or policy. (*Id*. at 15-16 ¶ 503.) Instead, plaintiffs assert that Wisconsin Rapids is liable solely for purpose of indemnifying the individual defendants under Wis. Stat. § 895.46, which states in relevant part, "[i]f the defendant in any action . . . is a public officer or employee and is proceeded against in an official capacity or . . . as an individual because of acts committed while carrying out duties as an officer or employee," damages shall be paid by the state or political subdivision employing that defendant providing he is acting within the scope of his employment. Wis. Stat. § 895.46(1)(a).

I.  **The Motion to Dismiss**

Wisconsin Rapids moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing that Wis. Stat. § 895.46 does not create an independent right of action for indemnification by a public employer for the actions of tis employees. (Dkt. #6.) A motion to dismiss for failure to state a claim is designed to test the complaint's legal sufficiency. *See* Fed. R. Civ. P. 12(b)(6). In conducting this review, the court must "constru[e]

4

the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiffs'] favor." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). Dismissal is warranted only if no recourse could be granted under any set of facts consistent with the allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

Wisconsin Rapids acknowledges that there is a split of authority as to whether Wis. Stat. § 895.46 provides an independent cause of action. (Dkt. #11, at 2.) Some courts have held that there is no cause of action for indemnification under § 895.46, but the statute affords an administrative procedure to seek that relief once a judgment of liability has been entered. *Jackson v. Graves*, No. 14-cv-1206, 2015 WL 5577527, at *4 (E.D. Wis. Sept. 22, 2015); *see also Williams v. Michalsen*, No. 19-cv-56, 2020 WL 1939136, at *9 (E.D. Wis. April 21, 2020) ("If the individual officers are found liable, the indemnity mandated by § 895.46 will be triggered; the plaintiffs do not need to sue the county for that to happen."). Where the potential indemnitee is named as a party to the suit, however, other courts have held that it is proper to include a prospective indemnitor as a defendant in the event that it becomes necessary to afford the plaintiff with relief. *Estate of Watts v. Heine*, No. 07-cv-644, 2008 WL 4058032, at *2-3 (E.D. Wis. Aug. 26, 2008), *abrogated on other grounds by Martin v. Milwaukee Cty.*, 904 F.3d 544 (7th Cir. 2018); *Bautista v. Vill. of Lomira*, No. 12-cv-126, 2013 WL 2405443, at *17 (E.D. Wis. May 31, 2013) (concluding that "the Village of Lomira is properly a party to this action for the purposes of satisfying its potential indemnification obligations under Wis. Stat. § 895.46").

Although plaintiffs may not be able to bring a freestanding claim against Wisconsin Rapids, therefore, plaintiffs would still be entitled to a judgment that it is obligated to

5

indemnify defendants Krakow and Fleisner in the event that plaintiffs prevail on their Fourth Amendment claims and were found to be acting within the scope of their employment. *See Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1091-92 (7th Cir. 1990) (requiring a municipality to indemnify the estate of a police officer found liable for excessive force). Indeed, under these circumstances, this court has repeatedly rejected a municipality's attempt to dismiss a claim for indemnification under Wis. Stat. § 895.46, noting that it is "appropriate and efficient to keep the [municipality] as a defendant in the case for the purpose of ordering complete relief to [plaintiffs]." *Murphy v. Juneau Cty.,* No. 22-cv-33-jdp, 2023 WL 3040649 (W.D. Wis. Apr. 21, 2023) (citing similar holdings in several recent cases); *see also Noeldner v. Taylor Cty.*, 629 F. Supp. 3d 874 (W.D. Wis. 2022) ("Defendants appear to be correct that § 895.46 may not create an independent cause of action for plaintiff, but that does not mean that plaintiff necessarily cannot pursue a claim of indemnification as a third-party beneficiary.").

Wisconsin Rapids' primary argument for dismissal appears to be based on its status as a small town and speculation that it might be subjected to "unnecessary, extensive, and expensive discovery." (Dkt. #11, at 1). At this early point in the litigation, this argument fails to serve as a reason to dismiss Wisconsin Rapids. First, Wisconsin Rapids does not dispute that the police officers *were* acting within the scope of their employment during the incident forming the basis of plaintiffs' complaint, but indicates that they may do so on summary judgment. (Dkt. #11, at 4.) Second, other than referencing a scarcity of resources, Wisconsin Rapids does not advance any argument showing that it should be exempt from providing discovery about the incident or the officers' actions within the scope of their employment, which would be necessary to establish indemnification under Wis. Stat. § 895.46. Third, both

6

Wisconsin Rapids and the individual defendants are represented by the same attorneys, which Wisconsin Rapids will be required to pay for whether they remain a named party or not. *See* Wis. Stat. § 895.46(1)(a) (providing for legal counsel or, if counsel is not provided, the payment of "reasonable attorney fees and costs of defending the action" against an officer or employee acting within the scope of employment). For purposes of efficiency and the administration of justice, the court concludes that it is appropriate for Wisconsin Rapids to remain as a party to the lawsuit, at least beyond the pleadings stage. Therefore, the motion to dismiss will be denied.

## II. The Request for Alternative Relief

Alternatively, Wisconsin Rapids asks that the court enter an order "expressly providing that (i) it is not obligated to participate in the litigation until such time as a judgment has been entered against the individual Defendants and Plaintiffs have made a request for indemnification of such judgment; and (ii) that it be removed from the caption in the matter, not listed as a party in any pleadings or other documents in this matter, nor mentioned or referenced as a potential indemnitor." (Dkt. #5, at 2.) Providing *no* authority in support of either request (dkt. #6, at 5), the request for alternative relief will also be denied.

As an initial matter, Wisconsin Rapids offers no reason to exempt it from providing discovery about the incident that forms the basis of the complaint nor whether the officers' actions within the scope of their employment for purposes of establishing a right to indemnification under Wis. Stat. § 895.46. There is also no authority for removing a municipal indemnitor from a case caption at this early stage of the lawsuit, there is authority for not disclosing a municipality's role as a potential indemnitor to the jury, "because that would be

7

irrelevant and prejudicial." *Murphy*, 2023 WL 3040649, at *7. As a result, this court has in the past opted to remove a municipal indemnitor "from the caption of any trial document that the jury sees" and to exclude "any evidence or argument about the [municipality's] role as indemnitor" during the trial. *Id*. At this stage of the proceedings, however, the court sees no reason to remove Wisconsin Rapids from the caption, nor a legal basis to excuse it from any reasonable discovery requests.

## ORDER

IT IS ORDERED that Defendant City of Wisconsin Rapids' motion to dismiss (dkt. #5) is DENIED.

Entered this 6th day of December, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge